NOT FOR PUBLICATION                    [Docket Nos. 55 & 64]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

RICHARD A. WILLIAMS,

        Plaintiff,

   v.

ROWAN UNIVERSITY and
DONALD H. FARISH,

       Defendants.

Civil No. 10-6542 (RMB/AMD)

**OPINION**

Appearances:

    Fredric J. Gross
    7 East Kings Highway
    Mt. Ephraim, NJ 08059
      Attorney for Plaintiff

    Jacqueline Augustine
    Office of the NJ Attorney General
    RJ Hughes Justice Complex
    PO Box 112
    Trenton, NJ 08625
      Attorneys for Defendant

**BUMB**, United States District Judge:

I.   Introduction:

    This matter comes before the Court upon a motion for summary judgment submitted by Defendants Rowan University ("Rowan") and Donald Farish ("Farish"), the former President of Rowan. [Docket No. 55]. Also pending is Plaintiff Richard A. Williams' (the "Plaintiff") cross-motion for sanctions [Docket No. 64]. For the

reasons set forth below, Defendants' motion is granted and Plaintiff's motion is denied.


II.   <u>Factual Background:</u>[1]

**A. Introduction**

Pursuant to his Second Amended Complaint (the "SA Complaint"), Plaintiff asserts causes of action related to alleged race discrimination and retaliatory action by the Defendants.  The SA Complaint contains two counts: Count I for alleged unlawful discrimination based on race asserted pursuant to 42 U.S.C. § 1981, via 42 U.S.C. § 1983, and Count II asserts claims for alleged retaliation in violation of N.J.S.A. § 2C:28-5.b (part of the criminal code dealing with retaliation against witnesses),[2] §

---

[1] Where there are significant factual disputes between the parties, the facts should be construed in favor of the non-moving party. <u>See</u> <u>Kopec v. Tate</u>, 361 F.3d 772, 775 (3d Cir. 2004).  In addition, where Plaintiff has not expressly disputed a material fact asserted by Defendants, those facts are deemed admitted for purposes of this motion.  <u>See</u> Local Rule 56.1 ("any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.").

[2] N.J.S.A. 2C:28-5.b, is a criminal statute.  "A person commits an offense if he harms another by an unlawful act with purpose to retaliation for or on account of the service of another as a witness or informant.  The offense is a crime of the second degree if the actor employs force or threat of force.  Otherwise it is a crime of the third degree."  In the event that Plaintiff is attempting to bring a claim under N.J.S.A. 2C:28-5.b, such claim is dismissed because this Court is without jurisdiction to hear state criminal matters.

10:5-12(d)(the New Jersey Law Against Discrimination) and § 10:6-2.C (the New Jersey Civil Rights Act).  See SA Complaint Ct. II, ¶ 30.

Plaintiff is an African American male who became employed as Rowan University's Equal Opportunity/Affirmative Action ("EEO/AA") officer and Director in May 1984.  Defs.' Statement of Material Fact ("DSOF") and Pl.'s Response to Statement of Material Fact ("PRSOF") at ¶ 3-4.  Defendant Rowan is a public university in the State of New Jersey. Id. at ¶ 6.  Defendant Farish is a white male who was the president of Rowan from 1998 until 2011.  Id. at ¶ 5.  Rowan has several policies to prohibit discrimination in the workplace.  Id. at ¶¶ 7-12.  These policies encourage employees to report prohibited conduct to the EEO/AA Officer.  Id. at ¶ 13.


**B. Plaintiff's Job Responsibilities**

As the EEO/AA Officer, Plaintiff reported directly to the president and his job responsibilities included "monitoring the institution's commitments to Affirmative Action while assuring that minorities, women, and handicapped individuals had fair access to position vacancies."  PRSOF at ¶ 21. According to Plaintiff's job description, Plaintiff also had to

> (m)onitor the compliance of all University policies and procedures to ensure non-discrimination and a working environment free from harassment. Develop, implement, maintain and modify the University's diversity management and

3

> affirmative action plan. Investigate student and staff
> allegations of discrimination and harassment . . . .

(Beran Certif., Ex. I).  Plaintiff states that he had no authority to update the affirmative action plan and his proposed changes had to be approved by the deputy attorney general and that investigations were reserved to Robert Zazzalli, who was the assistant provost. PRSOF at ¶ 26.

During his tenure, Plaintiff would delay the hiring process if he deemed an applicant pool not diverse enough because he "was required to take reasonable steps he needed necessary to ensure non-discrimination in hiring."  DSOF & PRSOF at ¶ 27.  Plaintiff would look at the names of candidates for positions at Rowan, where they went to school, their publications and what organizations they belonged to in order "to help . . . determine if the pool had minority candidates in it."  PRSOF at ¶ 28.


**C. Performance Reviews and the <u>DeSanto</u> Trial**

Plaintiff received numerous negative performance reviews during his tenure at Rowan.  While Plaintiff denies the relevance of his performance reviews to his termination of employment, he does not deny their existence.  Instead, he deems these negative reviews as "unsupported malicious hearsay [that] reflects the turf jealousy or racism of department heads who wanted to do hiring their own way,

4

regardless of equal opportunity law." Id. at ¶ 32.  Plaintiff further states that he continued in office without demotion or discipline and with routine pay raises prior to the Farish regime." Id. at ¶ 33.

Plaintiff received his first negative evaluation the year he started at Rowan.  In a 1984 review by then Rowan president Mark M. Chamberlain, Plaintiff was told that the president had serious concerns about his performance.  The review states "you cannot substitute your judgment of the qualifications of a particular candidate for the judgment of others directly in the process."  DSOF at ¶ 32.  About a year later, on September 23, 1985, Rowan's then president Dr. Herman James wrote a similar letter about Plaintiff's performance.  The letter indicated that Plaintiff, inter alia, "continued to impose [his] concerns of the appropriateness of the search in matters not related to affirmative action." DSOF & PROF ¶ 33-34.

In 1998, Defendant Farish became Rowan's president.  DSOF at ¶ 36.  Farish received complaints that Plaintiff was too intrusive, heavy-handed, and insulting in the hiring search process.  Id. at ¶ 37.  Farish testified at his deposition that Plaintiff's conduct became "illegal in the sense that [Plaintiff] was focused far too much on having people who in his view met the requirements for the position and wanting to substitute his judgment for the judgment of

the search committee . . . . [Plaintiff's] view was if a minority candidate meets the minimum qualifications for the position, the search is over, hire them [but] that's not how [Rowan] did things at all." DSOF at ¶ 37 (quoting Farish Dep., Beran Ex. E at 111:1-112:5 & 112:5-9). Farish testified that shortly after he became president he "began to receive complaints from people as I got to know them, people who were on the faculty, people who were department chairs, people who said that Dick Williams was too intrusive in the search process." (Farish Dep. at 111:9-13). Plaintiff characterizes these "purported complaints [as] efforts by departmental functionaries to free the hiring process [at Rowan] from equal opportunity oversight." PRSOF at ¶ 37.

In 2000, Farish gave Plaintiff a negative written performance review. He stated that Plaintiff was improperly controlling the hiring process by requiring his signature of approval to proceed with both the original pool and short list of candidates and also by sitting in on interviews and some meetings of search committees. DSOF at ¶ 40. Plaintiff denies that he took control of the hiring process and that requiring his signature was "fully consistent" with his responsibility to ensure non-discriminatory hiring. PRSOF at ¶ 40. Plaintiff received another unsatisfactory review in February 2002 wherein Farish cited his dissatisfaction with Plaintiff's performance (e.g., "his heavy-handed, bull-in-the-china shop

approach to [the] job"). This was cited as the reason for not offering Plaintiff a salary increase for that year. DSOF at ¶ 43.

In September 2002, Plaintiff testified pursuant to subpoena in the United States District Court in the matter of DeSanto v. Rowan University, a reverse race discrimination case brought by a Rowan employee. Id. at ¶ 45. A jury returned a verdict in favor of plaintiff DeSanto and against Rowan. In his SA Complaint, Plaintiff avers that he was blamed for the DeSanto loss at a meeting that took place on September 31, 2002. Id. at ¶ 48. Plaintiff contends that he was clearly blamed for the DeSanto loss and, as a result, was not given a 3 percent raise previously promised by Farish. PRSOF at ¶ 49. In December of 2002, Farish sent Plaintiff a letter stating that "[v]irtually the only evidence that appeared to be used to support [the DeSanto verdict] came from your records and reports." DSOF at ¶ 51. Farish's letter went on to add:

> [i]f this were a private company, there is no question in my mind that you would have been terminated by this point. I resist such an action based on my belief that your intentions are noble, however flawed may be your methods.

DSOF at ¶ 52.

Approximately, three years later, on August 11, 2005, Katherine Gover, Rowan's Director of Human Resources, noted in Plaintiff's evaluation that she was not recommending a salary adjustment because: Plaintiff was only meeting with new minority and women faculty (as

7

opposed to all new faculty), Plaintiff had a practice of not always issuing final determination letters to those accused of violating Rowan's discrimination policy, and because Plaintiff left an inappropriate note on a candidate's resume.  DSOF at ¶ 54.  The inappropriate note was attached to the resume of a candidate and indicated that the individual was "easy on the eyes." (DSPF & PRSOF at ¶ 29).  Although the note was attached by someone other than Plaintiff, Plaintiff admits that he failed to remove the note, which was meant as a "joke", (although he says he intended to), before forwarding the resume to the Human Resources Director of Recruitment. PRSOF at ¶ 29.  With respect to the remaining contents of Gover's letter, Plaintiff contends that the criticisms were unwarranted and influenced by concerns about him articulated by Farish or others. PRSOF at ¶ 53.

Defendants also claim that in the fall of 2005, Plaintiff failed to investigate a student's sexual harassment complaint. DSOF at ¶ 55.  Plaintiff, however, argues that the alleged victim declined to pursue the matter formally, which would have triggered an investigation. Id. at ¶ 56.  The parties dispute whether an investigation based on the student's complaint alone was required. DSOF & PRSOF ¶ 58-62.  However, Plaintiff admits that Robert DeAugustine of the Human Resources unit investigated the matter after

a friend of the alleged victim complained about Plaintiff's failure
to pursue the matter.  PRSOF at ¶60.

In a September 4, 2006 evaluation of Plaintiff, Richard Hale,
Interim Vice President for Administration and Finance, stated that
Plaintiff's performance was "below average" because "individuals
appear to have little confidence in [his] ability to conduct a fair
process, consistent with applicable laws, rules and regulations" in
reference to Plaintiff's investigations.  DSOF at ¶ 63-65.
Plaintiff contends that while Hale was not employed by Rowan during
the DeSanto trial, Hale was told by others that Plaintiff caused the
DeSanto loss and thus, the evaluation was retaliatory.  PRSOF at ¶
64.  Hale, however, still recommended that Plaintiff receive a 3
percent raise in 2006.  DSOF & PRSOF ¶ 66.

As of September 4, 2006, Defendants contend that Dr. Marie
Tiemann, the Executive Director of Human Resources, became
Plaintiff's day-to-day supervisor.  DSOF at ¶ 67.  Plaintiff,
however, objected to her supervision because he could only be
supervised by a direct report to the president or his designee.
PRSOF at ¶ 67.  On December 5, 2006, Tiemann sent a letter to Hale
indicating that Plaintiff's performance was not meeting the needs
of the campus community because they had "no confidence in [his]
ability to fairly hear discrimination and affirmative action

complaints." DSOF at ¶ 69.[3]  As a result, Tiemann recommended giving Plaintiff "one year's notice and [placing] him on administrative leave for the year." DSOF at ¶ 70.

### D. Plaintiff's Move to Temporary Assignment

Plaintiff was on sick leave from mid-November 2006 through late January 2007 and February 7, 2007 through March 26, 2007. DSOF & PRSOF at ¶ 71.  On March 28, 2007, Plaintiff met with Vice President Hale who told Plaintiff that he "would no longer be the affirmative action officer effective June 30, 2007." DSOF at ¶ 72.  Plaintiff then met with Farish in April 2007, and Plaintiff requested that he be able to stay for another eighteen months so that he would receive full health and retirement benefits after his retirement. DSOF at ¶ 73.  Plaintiff suggested a position for himself as an Educational Opportunity Fund counselor (hereinafter "EOF Counselor") at Rowan's Camden campus. DSOF at ¶ 74.

In consideration of Plaintiff's length of service at Rowan and Plaintiff's failing health, President Farish told the Plaintiff that he could report to the Dean of Rowan's Camden campus as an EOF Counselor, which was a "temporary terminal assignment," and that Plaintiff could retire on December 31, 2008. DSOF at ¶ 76.

---

[3] As discussed in more detail below, Plaintiff seeks to bar the testimony of Tiemann via a cross-motion filed for alleged discovery abuses by Defendants. [Docket No. 64].

Plaintiff contends that there is "no document in the record that indicates that anybody in the Rowan hierarchy is authorized to make a 'temporary terminal assignment.'" PRSOF at ¶ 76.  Despite his denial as to the nature of his assignment or the authority to make such assignment, Plaintiff does not deny the benefit of the new assignment: he was able to reach "his twenty-five years of service and receive permanent health benefits and pension for life, instead of being terminated eighteen months earlier on June 30, 2007."  DSOF at ¶ 77.  Moreover, Plaintiff does not deny that he received the same salary and benefits during the temporary assignment in the amount of $83,926.78, even though the EOF position normally did not carry such a high salary. DSOF at ¶¶ 79-80.

The Defendants contend that because the temporary position was "terminal," Plaintiff's employment with Rowan would end on December 31, 3008, regardless of whether Plaintiff chose to retire. Plaintiff contends that as an EOF counselor at Rowan's Camden campus, he was a member of the "AFT" – presumably the American Federation of Teachers, though Plaintiff does not define that term for the Court. PSOF at ¶ 78.  Plaintiff contends that the AFT contract makes no provision for a terminal appointment and that the union's collective

bargaining agreement does not contemplate such an assignment.  <u>Id.</u> at 78-79.[4]

On June 26, 2008, approximately six months before his end date, Plaintiff spoke with Farish and requested that he remain an EOF Counselor at Rowan's Camden campus for an additional year.  DSOF at ¶ 81.  President Farish later conveyed to Plaintiff that Dr. Tyrone McCombs (an African American male), the head of the Camden campus, did not wish to extend Plaintiff's position.  <u>Id.</u> at ¶ 82.  Plaintiff contends that McCombs was told by his (McComb's) predecessor of Farish's directive "to get plaintiff off of Rowan's Glassboro Campus" because Plaintiff "had lost the university a lot of money in his prior job as an affirmative action officer." PRSOF at ¶ 83.[5]

### E. Plaintiff's Retirement

After speaking with Farish, Plaintiff drafted a letter on June 26, 2008, stating that he was retiring.  DSOF at ¶ 84.  Two and one-half months later, however, on September 12, 2008, Plaintiff sent a letter to President Farish attempting to retract his anticipated December 31, 2008 retirement.  DSOF at ¶ 84-85.  While the Defendants aver that once an administrator submits retirement

---

[4] The Plaintiff has not provided the Court with the collective bargaining agreement.

[5] Beyond Plaintiff's argument there is no evidence of this in the record.  Instead, Plaintiff relies on the declaration of counsel and an email drafted by counsel.  <u>See</u> Gross Decl., Ex. 1.

paperwork it cannot be rescinded, Plaintiff contends that pursuant

to the AFT contract, the request for retirement and any effort to

rescind it must go to the Board of Trustees.[6]

Farish informed Plaintiff on October 16, 2008 that he could not

retract his retirement.  Defendants communicated their denial to

Plaintiff in a letter dated October 16, 2008.  The letter reads, in

relevant part:

> This is in response to your letter, dated September 12,
> 2008, seeking to recontract for another year.
> Unfortunately, recontracting for another year is not
> possible.  I must inform you that as previously agreed,
> your last day of employment at Rowan will be December 31,
> 2008.
>
> As you know, you were provided with a terminal contract
> ending on December 31, 2008.  My letter to you, dated June
> 5, 2007 confirmed that you will leave University
> employment on that date.  By letter, dated July 25, 2007,
> you confirmed your understanding of the arrangement.  You
> indicated that you would let me know by June 30, 2008 if
> you requested a renegotiation of your continuation at
> Rowan beyond December 31, 2008.
>
> I received a letter from you, dated June 26, 2008, stating
> your "formal indication" that you would be leaving Rowan
> effective December 31, 2008.  In reliance on your letter,
> your name was forwarded to the Board of Trustees as part
> of personnel actions.  The Board formally accepted your
> retirement from Rowan University at its September 10, 2008
> meeting.

Defs.' Ex. BB.  Thus, Plaintiff retired effective December 31, 2008.

Plaintiff does not deny that as a result of his retirement, he

---

[6] Again, the contract was not provided by Plaintiff.

receives full health and retirement benefits for life.[7]   DSOF at ¶ 88.

III. <u>Summary Judgment Standard</u>

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  <u>Id.</u>   When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party."  <u>Meyer v. Riegel Prods. Corp.</u>, 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. <u>Anderson</u>, 477 U.S. at 252. Further, a court does not have to adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury"

---

[7] Plaintiff responds to the Defendants' factual assertion that they could have insisted that Plaintiff leave effective June 30, 2007, but extended his position as "a favor . . . so that [P]laintiff could retire with a pension and health benefits for life" by stating "Rowan would have invited a suit that much earlier if it had fired [P]laintiff in 2007."  DSPF & PRSOF at ¶ 90.

could believe them. Scott v. Harris, 550 U.S. 373, 380 (2007). In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party . . . ." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995); Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009)) ("[S]peculation and conjecture may not defeat summary judgment.").

IV.   Analysis of Motion for Summary Judgment

**A. Count I (Race Discrimination, 42 U.S.C. § 1981)**

Plaintiff's only federal claim is one for race discrimination asserted under 42 U.S.C. § 1981, via 42 U.S.C. § 1983.  Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. Subsection (c) of that statute provides that these rights "are protected against impairment by nongovernmental discrimination and impairment under the color of state law."  Id. The only claim that has survived the Defendants' statute of limitations affirmative defense is Plaintiff's allegation that Defendants' decision not to rescind his retirement decision was racially discriminatory.  See Court's Opinion, Docket No. 23 at 17. For the reasons set forth below, this Court will grant summary judgment in favor of Defendants on this claim.

*1. Impact of State Actor Status*

Defendants are correct that, pursuant to McGovern v. City of Philadelphia, 554 F.3d 114, 120-21 (3d Cir. 2009), a 42 U.S.C. § 1981

16

claim cannot be asserted against a state actor.  That said, in the instant case, as set forth in this Court's prior opinion dealing with the statute of limitations, Plaintiff may assert § 1981 claims pursuant to § 1983 and such claims may be properly asserted against a state actor.  See e.g., McGovern, 554 F.3d at 120-21 ("we hold that 'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.'")(quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989); Byrd v. City of Philadelphia, No. 12-4520, 2013 U.S. Dist. LEXIS 151321, at *12 (E.D. Pa. Oct. 22, 2013)(allowing plaintiffs to amend the complaint to allege their § 1981 claims under § 1983 against state actors).  Thus, the Court cannot dismiss Plaintiff's race discrimination claim on this basis.

Contrary to the Plaintiff's assertion in his opposition brief, this Court has never considered the argument asserted by Defendants that Rowan University is not a "person" for purposes of § 1983.  Pl.'s Opp. Br. at 2.  While these arguments were presented in conjunction with the motion to dismiss the Plaintiff's original complaint, [see Docket No. 10], this Court dismissed that complaint on other grounds and never reached the merits of those arguments.  Plaintiff's request for sanctions is, therefore, meritless.  See Pl.'s Opp. Br. at 5 n.1.

Moving to the merits of Defendants' argument, the Court notes that the SA Complaint is clear that Defendant Farish is "sued . . . in his individual capacity." Docket No. 26 at ¶ 8.  As such, this Court need not review the Defendants' argument that Farish is not a "person" for purposes of § 1983. Hafer v. Melo, 502 U.S. 21, 23 (1991) ("We . . . hold that state officials sued in their individual capacities are 'persons' for purposes of § 1983.").

With respect to Defendant Rowan, there is clear support for the proposition that the university is not a person for purposes of § 1983.  Cottrell v. Keyshonna Norman, No. 12-1986, 2014 U.S. Dist. LEXIS 101645, *23 n.7 (D.N.J. July 25, 2014)("because § 1983 claims may only be asserted against a 'person' . . .  these claims fail against Rowan University. . . ."); cf. Davis v. Western Psychiatric Inst. and Clinic, 146 F. App'x 563, 564-65 (3d Cir. 2005)(citing cases finding that a state university is the alter ego of the state and therefore not a "person" for purposes of § 1983); Musila v. Lock Haven Univ., 970 F. Supp. 2d 384, (M.D. Pa. 2013)(finding that Lock Haven University not a person for purposes of § 1983).  For this reason, Plaintiff's claim for race discrimination under § 1981, asserted pursuant to § 1983, can be dismissed against Rowan University because it is not a person for purposes of § 1983.  However, even if this Court were to find that Rowan University was a person under § 1983, the Court finds that summary judgment is nevertheless appropriate

because Plaintiff's claim fails on the merits for the reasons set
forth in more detail below.

    *2. Eleventh Amendment Immunity Arguments*

    In the alternative to the argument that Defendants Rowan and
Farish, in his official capacity, are not persons under § 1983,
Defendants contend that both Rowan and Farish are entitled to
Eleventh Amendment immunity.  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed
> to extend to any suit in law or equity, commenced or prosecuted
> against one of the United States by Citizens of another State,
> or by Citizens or Subjects of any Foreign State.

This sovereign immunity "extends to state agencies and state
officers, 'as long as the state is the real party in interest.'"
Estate of Lagano v. Bergen County Prosecutor's Office, 769 F.3d 850,
*16 (3d. Cir. 2014)(quoting Fitchik v. N.J. Transit Rail Operations,
873 F.2d 655, 659 (3d Cir. 1989)).  "To determine whether the state
is the real party in interest, this Court considers three factors:
(1) whether the money to pay for the judgment would come from the
state; (2) the status of the agency under state law; and (3) what
degree of autonomy the agency has."  Id. (citing Fitchik, 873 F.2d
at 659).  This Court is careful to heed the Third Circuit's
instruction that "the Eleventh Amendment inquiry is analytically
distinct from the question of whether a[n] . . . entity is a 'person'
for § 1983 purposes."  Id. at n.8.  To the extent Plaintiff asks for

prospective injunctive relief, such relief is not barred by the Eleventh Amendment.  <u>Smith v. Sec'y of Dep't of Environmental Protection</u>, No. 13-1569, 2013 U.S. App. LEXIS 19095, 2013 WL 5071305, at *1 (3d Cir. Sept. 16, 2013).  That said, however, based upon this Court's determination that all of Plaintiff's claims fail on the merits, a review of what prospective relief Plaintiff may be seeking is not warranted.

Turning to damages, the Defendants correctly point out that other Courts have found that Rowan was entitled to Eleventh Amendment immunity in other matters.  See <u>e.g.</u>, <u>Nannay v. Rowan College</u>, 101 F. Supp. 2d 272, (D.N.J. 2000)(finding that Rowan was entitled to Eleventh Amendment immunity after reviewing the factors set forth in <u>Fitchik</u> in conjunction with affidavit from Rowan addressing those factors).  In the instant matter, however, the Court finds it telling that the Defendants have neither mentioned <u>Fitchik</u> in their moving papers nor have they submitted an affidavit addressing those factors as was done in the <u>Nannay</u> case.  Because Defendants have not provided this Court with sufficient evidence to address the <u>Fitchik</u> factors, and because this Court grants summary judgment on other grounds, the Court will not resolve the issue of Eleventh Amendment Immunity.  <u>See Estate of Lagano</u>, 769 F.3d at *17 (remanding case to the District Court and directing the Court to apply <u>Fitchik</u> to determine whether Eleventh Amendment immunity was applicable).

### 3. Race Discrimination Claims Against Rowan

In order for Plaintiff to establish liability against Rowan under § 1981, Plaintiff must satisfy the requirements set forth in Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S. 658, 690 (1978), for establishing municipal liability under § 1983.[8] See Thomas v. City of Philadelphia, 573 F. App'x 193, 197 n.4 (3d Cir. 2014)(noting that Monell would need to be applied to determine if the City could be subject to liability); Daniels v. School Dist. of Philadelphia, 982 F. Supp. 2d 462, 477 (E.D. Pa. 2013).  To establish liability against Rowan under Monell, Plaintiff must demonstrate that Rowan had a policy or practice that was the "'moving force' behind the alleged violation." Daniels, 982 F. Supp. 2d at 477. Here, there is absolutely no evidence presented by Plaintiff that an official policy or practice of Rowan was the moving force behind the alleged race discrimination.  In fact, Plaintiff's counter-statement of material facts submitted in opposition to summary judgment is entirely devoid of any reference to a custom or policy of Rowan's that was the "force" behind the discrimination alleged.  As such, this Court will grant summary judgment in favor of Defendants with respect to Plaintiff's race discrimination claims

---

[8]  Rowan may not be held liable for the alleged conduct of its subordinates under a theory of respondeat superior. See Monell, 436 U.S. at 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983).

21

asserted against Rowan.  See Brown, 539 F. App'x at *27 (affirming summary judgment as to claims against SEPTA where there was no evidence of unconstitutional policy, custom or practice); Daniels, 982 F. Supp. 2d at 478 (granting summary judgment on § 1981 claim where plaintiff "presented no evidence of a policy or practice on the part of the School District endorsing race discrimination or a failure on the part of the School District to train its employees not to discriminate on the basis of race.").

### 4. Race Discrimination Claims Against Farish

Defendants argue that Defendant Farish is entitled to qualified immunity.  "An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was "'clearly established'" at the time of the challenged conduct."  Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014).  The question of whether Farish is entitled to qualified immunity requires this Court to engage in a two-step analysis. Pursuant to the first step, the Court must ask whether there is an issue of fact as to whether Farish's conduct violated Plaintiff's statutory right to be free from discrimination on the basis of race. If the Court determines that such a right has been violated, taking all inferences in favor of Plaintiff, it must then ask "whether that right was 'clearly established' at the time of the challenged conduct." Dougherty v. Sch. Dist. of Phila., No. 13-3868, 2014 U.S.

App. LEXIS 22050, at *12 (3d Cir. Nov. 21, 2014).

The Court first turns to the determination of whether Plaintiff's right to be free from discrimination was violated when Farish refused to rescind Plaintiff's decision to retire.  In the employment discrimination context, § 1981 claims are analyzed under the familiar three-step, burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and refined in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). See Davis v. City of Newark, 285 F. App'x 899, 903 (3d Cir. 2008); Wallace v. Federated Dep't Stores, Inc., 214 F. App'x 142, 144-45 (3d Cir. 2007); Campbell v. Sup. Ct. of N.J., No. 11-555, 2012 WL 1033308, at *17 (D.N.J. Mar. 27, 2012).

"At the first step, [plaintiff] must establish a prima facie case of discrimination, meaning he must show that: (1) he is a member of a protected class; (2) he satisfactorily performed his required duties; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred "under circumstances that raise an inference of discriminatory action . . . ." Thomas v. City of Phila., 573 F. App'x 193, 195-96 (3d Cir. July 15, 2014)(citing Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003)).[9]

---

[9] The parties refer to the prima facie case under § 1983 for the denial of equal protection. See Defs.' Br. at 23; Pl.'s Opp. Br. at 7. While Section 1981 has been deemed to be "essentially coterminous with the Equal Protection Clause, in that 'purposeful discrimination

"One way to meet the fourth element of the prima facie case is to show 'that the employer has treated more favorably similarly situated persons not within the protected class.'" <u>Id.</u> at 196 (quoting <u>Jones v. Sch. Dist. of Phila.</u>, 198 F.3d 403, 413 (3d Cir. 1999)).

There is no dispute that Plaintiff meets the first prong of the test – he is an African American.   As to the second prong of the test, as discussed above, there is ample evidence in the record that Plaintiff was <u>not</u> satisfactorily performing the duties of his position.   See <u>e.g.</u>, Plaintiff's performance review letters, Defs.' Exs. D, H, J, K, M-T.   The Court will assume, however, that Plaintiff was satisfactorily performing his duties as required under the prima facie test and address the other factors.

Turning to the third prong of the test, whether the refusal to allow Plaintiff to rescind his resignation constitutes an adverse employment action, the parties do not address that test.   It is questionable, however, whether Plaintiff can satisfy this prong. An employer's refusal to allow an employee to rescind his resignation has been held <u>not</u> to be an adverse employment action. Refusing to rescind a resignation, absent a contractual or statutory duty to do

_____

that violates the Equal Protection Clause of the Fourteenth Amendment will also violate § 1981'" <u>Guan N. v. N.Y. City Dep't of Educ.</u>, 2014 U.S. Dist. LEXIS 44783, *86 (S.D.N.Y. Mar. 24, 2014)(citing <u>Gratz v. Bollinger</u>, 539 U.S. 244, 276 n.23 (2003)), this Court finds the more appropriate test is the test employed by the Third Circuit in <u>Thomas</u> as set forth above, which incorporates the element set forth by the parties regarding similarly situated individuals.

so, is "not an adverse employment action for the simple reason that the employment relationship has ended."  See Schofield v. Metro Life Ins. Co., No. 03-357, 2006 WL 2660704 at *9 (W.D. Pa. Sept. 15, 2006) aff'd 2007 U.S. App. LEXIS 25468 (3d Cir. Oct. 30, 2007); see also Hibbard v. Penn-Trafford Sch. Dist., No. 13-622, 2014 WL 640253, at *10 (W.D. Pa. Feb. 19, 2014) ("Because plaintiff's resignation was voluntary and there was no constructive discharge, the District's failure to accept her rescission of her voluntary resignation was not an adverse employment action.")(citations omitted)).

Here, Plaintiff contends that he became an AFT member and under that collective bargaining agreement ("CBA"), he was somehow entitled to rescind his resignation.  The Plaintiff has failed to provide this Court with any evidence supporting this assertion.  In fact, his deposition undermines the argument that the AFT deemed him entitled to rescind his resignation.  See Pl.'s Dep. 136:10-22 (indicating that Plaintiff disagreed with the position taken by the AFT that "there is nothing more that the AFT [could] do for you in regards to this matter" because Plaintiff was "on a terminal contract[.]").  Moreover, he does not provide this Court with a copy of the allegedly relevant CBA and the brief language he cites from that agreement does not support his point.  Plaintiff cites to "Article XIII.A" that purportedly states that "Appointment and reappointments of employees shall be made by the Board of Trustees

25

of each College." PRSOF, ¶ 86, citing to Gross Decl. ¶ 4.  This language, however, says nothing about a request to rescind a resignation, as is the case here.  Thus, Plaintiff cannot establish this prong of the prima facie test.

Even assuming that the refusal to rescind his resignation constitutes an adverse action, Plaintiff has failed to provide any evidence to demonstrate the fourth prong, that the alleged adverse employment action occurred "under circumstances that raise an inference of discriminatory action."  In Plaintiff's Statement of Material Facts, he lists the following as support for his allegation that he was treated differently due to his race (and in support of his state law retaliation claim):

- Farish, Hall and Zazzali were all white males who "contrived to remove [P]laintiff from Rowan in the shared incredibly-mistaken [sic] belief that [P]laintiff's testimony caused the DeSanto loss."  PSOF at ¶ 101.

- "Hale, Gover and Tiemann all signed documents adverse to [P]laintiff which were subjective, laced with hearsay, and in substantial measure inconsistent with the truth." Id.

- Plaintiff was entitled to have the Board of Trustees accept or reject his effort to withdraw his notice of retirement. Id.

- "Rowan permitted at least two non-black employees Grupenhoff and Rowan – to with draw their notices of retirement during the same time frame that Farish would not allow Plaintiff to do so." Id.

- Farish had no authority to reject Plaintiff's withdrawal of his resignation, because only the Trustees have that authority. Id.

26

The Court notes that the mere fact that Farish is Caucasian is not enough to satisfy this prong.  See Coulton v. Univ. of Penns., 237 Fed. Appx. 741, 748 (3d Cir. 2007) ("The mere fact that [the adverse decision-makers] were of a different race than [the employee], however, is insufficient to permit an inference of discrimination.").  Instead, Plaintiff attempts to supply sufficient evidence that he was treated differently from other individuals similarly situated.  Pl.'s Opp. Br. at 7. Specifically, Plaintiff cites to Dr. Richard Grupenhoff, a non-African-American Professor who had requested to retire in December of 2008 but was allowed to retract his retirement. Plaintiff also cites to Dr. Janice Rowan, another non-African-American professor who was also allowed to retract her retirement request.  Id. at ¶ 11-12.[10]  As Defendants point out, and

---

[10] While not explicitly discussed by the parties, the Court notes that Plaintiff's deposition contains other statements regarding alleged ways he was treated differently based on race.  These amount to nothing more than either vague or unsupportive conclusory assertions insufficient to raise an inference of discrimination.  See Pl.'s Dep. 156-158 (stating that he believes he did not receive salary increases because he was African American, but noting that he does not know whether others who had performance issues received salary raises.  He also states that Rick Hale contacted him when he was on sick leave telling him "not to work" and that this contact was, somehow, a form of harassment because "someone else who is African American [Vanetta Turner] . . . went out on sick leave not too long after I came back, and they were hassling her to do work from home. So which is it?").  Plaintiff's attempt to create inconsistency here

Plaintiff does not deny, these two employees were full-time tenured faculty members, unlike Plaintiff.  DSOF at ¶ 92 (citing Pl.'s Dep. 150:14-24).  During his deposition, Plaintiff learned – and does not dispute – that an African American faculty member was permitted to change his retirement date and that two Caucasian faculty members were not permitted to change their retirement dates.  (Pl.'s Dep. 151:8-152:5).

Plaintiff argues that "[i]t makes no material difference that the comparators were tenured faculty or that they operated under a differently-named pension program."  Pl.'s Opp. Br. at 7.  Instead, Plaintiff contends that

> [w]hat is crucial is that Farish arrogated to himself the right to make the final decision on [P]laintiff's effort to rescind his notice of termination when only the Board of Trustees has final authority to accept or reject such a rescission. Therefore white comparators were allowed to put their rescission requests to the Board of Trustees whereas Richard Williams, an African American was not allowed to do so.

Pl.'s Br. at 7-8.  Plaintiff further argues that he cannot identify any other employee who was selected for a temporary terminal assignment because there is no authority for imposing such an assignment on a Rowan employee and, therefore, he "was denied the

---

is futile.  What this testimony reveals is that Defendants did not want Plaintiff to work while on sick leave.  How Plaintiff could view this as a form of discrimination is bewildering.

Equal Protection of the Law when Farish singled him out for that bogus job title."  Pl.'s Br. at 9.

In order to qualify as similarly situated, the "relevant aspects of employment need to be nearly identical," to the purported comparator.  Smart v. City of Phila., No. 10-1096, 2013 U.S. Dist. LEXIS 73588 at *17 (E.D. Pa. May 23, 2013)(finding that plaintiff could not establish a prima facie case under § 1981 under Third Circuit precedent where alleged comparators had a different level of seniority); see Warenecki v. City of Philadelphia, No. 10-1450, 2010 U.S. Dist. LEXIS 116912, *22 (E.D. Pa. Nov. 3, 2010)(noting that to be similarly situated requires comparators to have engaged in the same conduct as a plaintiff and share all relevant aspects of employment).  Here, as Plaintiff admits, the alleged similarly situated individuals were tenured professors in clear contrast to Plaintiff's position.  Moreover, the alleged similarly situated comparators have not been shown by Plaintiff to have had similar performance issues.  See Warfield v. McKenzie, 460 F. App'x 127, 130 (3d Cir. 2012)(noting that even if plaintiff and comparator had the same responsibilities, they did not have the same performance problems and thus were not similarly situated).  Additionally, while Plaintiff contends he is unable to find another individual who was given a temporary terminal assignment and allowed to rescind a resignation, this Court notes that the bar is not that high; Plaintiff

has failed to identify any individual who was not a tenured faculty member that was allowed to rescind a resignation.  See Smart, 10-1096, 2013 U.S. Dist. LEXIS 73588, at *17 ("To show that an employee is 'similarly situated,' relevant aspects of employment need to be nearly identical.")(emphasis added).  In sum, Plaintiff has failed to satisfy the fourth prong of the prima facie test by providing evidence that others who were similarly situated were treated more favorably.  See Thomas, 573 F. App'x at 196 (affirming summary judgment on plaintiff's § 1981 race discrimination claim where plaintiff's reliance on comparators was misplaced as both alleged comparators differed from plaintiff).

Having failed to provide evidence of similarly situated comparators that were more favorably treated, Plaintiff must provide other adequate evidence to support an inference of discrimination.  See Warenecki, 2010 U.S. Dist. LEXIS 116912, at *22 ("In the alternative, Plaintiff may establish the fourth element of her prima facie case by producing other evidence adequate to support an inference of discrimination.").  To this end, Plaintiff argues that Farish asked Plaintiff to stop enforcing equal opportunity in construction projects and that the university gave a non-minority applicant a "wired appointment as Vice-President of Student Affairs even where a more qualified minority candidate had been ranked number one by the search committee."  Pl.'s Br. at 11.  Moreover, in his

30

brief,  Plaintiff avers that Farish asked Plaintiff in 1998, "What, you don't want to work for a white guy who is now the President?" Id.  None of these averments is sufficient to raise an inference of race discrimination related to Farish's refusal to allow Plaintiff to rescind his resignation in 2008.  See Joseph v. New Hersey Rail Operations Inc., No. 13-4430, 2014 U.S. App. Lexis 18287, at *5 (3d Cir. Sept. 24, 2014)(Here, "[e]ven if we were persuaded that the use of the phrase 'you people' in this context would constitute direct evidence . . . [Joseph] ha[s] not shown that [NJ Transit]'s decision maker [—Wigod—] relied on [Joseph's] race" in deciding to terminate him."); Warfield, 460 F. App'x at 130 (finding that allegations that plaintiff was subjected to excessive monitoring and scrutiny, yelled at, belittled by her supervisor and required to wear suits while a co-worker was allowed to dress more casually did not imply race discrimination).

     In sum, the record demonstrates that, instead of terminating Plaintiff in 2007, Defendant Rowan voluntarily extended Plaintiff's employment to allow him to retire with full benefits, despite having no obligation to do so.  Plaintiff has presented no evidence demonstrating that Defendants were required to present his desire to rescind his resignation to the Board of Trustees or that the reasons for refusing to allow the rescission took place under circumstances giving rise to an inference of discrimination.

Therefore, Plaintiff cannot establish a prima facie case of race discrimination.  As there is no statutory violation, Farish is entitled to qualified immunity and summary judgment will be granted in favor of Farish on Plaintiff's federal claim.

      *5. Plaintiff's Due Process and Equal Protection Claims*

      Plaintiff's SA Complaint appears to attempt to improperly bootstrap time-barred claims for alleged violations of the Fourteenth Amendment under § 1983 to his timely § 1981 claim (properly asserted pursuant to § 1983).  For reasons already stated in this Court's prior Opinion, however, only Plaintiff's § 1981 claim, again, asserted pursuant to § 1983, is viable as his separate § 1983 counts were barred under the applicable two year statute of limitations. See Docket No. 23.  A § 1981 claim for race discrimination cannot be conflated with separate and distinct claims brought pursuant to § 1983 for an alleged due process violation that is time barred.  See Guan v. NYC Dep't of Education, No. 11-4299, 2014 U.S. Dist. LEXIS 44783, *85 (S.D.N.Y. Mar. 24, 2014)("Plaintiffs provide no reason to think that § 1981 bears on their due process or Fourth Amendment claims."); Mack v. Ala. Dep't of Human Res., 201 F. Supp. 2d 1196, 1206 n.5 (M.D. Al. 2002)(stating, "[t]o put it bluntly, there is no such thing as a Section 1981 claim under the [First Amendment or Due Process Clause].").  While there is also no separate viable § 1983 claim here for an Equal Protection violation, the Court notes again,

however, that Section 1981 has been deemed to be "essentially coterminous with the Equal Protection Clause, in that 'purposeful discrimination that violates the Equal Protection Clause of the Fourteenth Amendment will also violate § 1981.'" Guan N. v. N.Y. City Dep't of Educ., 2014 U.S. Dist. LEXIS 44783, *86 (S.D.N.Y. Mar. 24, 2014)(citing Gratz v. Bollinger, 539 U.S. 244, 276 n.23 (2003)). In sum, the only permissible federal claim in this matter is Plaintiff's § 1981 claim for race discrimination asserted pursuant to § 1983, which "overlaps" with the protections offered by the Equal Protection Clause.  For the reasons already set forth above, this Court finds that Defendant Farish is entitled to summary judgment on this claim.

Finally, if this Court were to find that Plaintiff can assert a Due Process claim pursuant to § 1981 (again, via the vehicle of § 1983), it finds that Plaintiff has failed to present sufficient evidence to create a genuine dispute of material fact as to whether he was denied either substantive or procedural due process (it is unclear from both his complaint and the motion papers which is being alleged) because of his race.  As set forth in detail above, Plaintiff has presented no evidence whatsoever to support his

argument that he was prevented from rescinding his resignation because of his race.[11]

## B. Count II:  New Jersey Law Against Discrimination

In Count II of the SA Complaint, Plaintiff alleges that he was retaliated against for testifying in the DeSanto trial in 2002 in violation of the New Jersey Law Against Discrimination ("LAD"), N.J. Stat. Ann Sec. 10:6-2.  In order to prove a prima facie case of retaliation under the LAD, plaintiff must show that: (1) he engaged in a protected activity known to the defendant; (2) he was thereafter subject to an adverse employment decision by the defendant; and (3) there was a causal link between the two.  Sanchez v. SunGard Availability Servs. LP, 362 F. App'x 283, 287 (3d Cir. 2010).  Once plaintiff meets all three prongs of a prima facie retaliation case, the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) applies.  Kolb v. Burns, 320 N.J. Super. 467, 479 (App. Div. 1999).  Under McDonnell-Douglas, once a plaintiff proves a prima facie case, "defendant has the burden of presenting evidence that articulates some legitimate, non-discriminatory reason for the employee's discharge.  Upon such presentation, the presumption disappears and the plaintiff has the

---

[11] In addition, the Third Circuit has made clear that even tenured public employment is not a fundamental property interest entitled to substantive due process protection. Nichols v. Pennsylvania State Univ., 227 F.3d 133 (3d Cir. 2000).

burden of proof to establish genuine issues of material fact regarding whether employer's proffered explanation is pretextual, or that retaliatory discrimination was the more likely reason for the discharge." Kolb, 320 N.J. Super. at 478-79.  The burden on the employer is "relatively light," Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994), and does not oblige the employer to persuade a court that it was actually motivated by the proffered reasons.  Slahoda v. United Parcel Service, 207 N.J. Super. 145, 153 (App. Div. 1986).

Once the employer meets the burden of production, the burden of proof then shifts back to the plaintiff who then must prove that the alleged reasons articulated by the defendants were not the true reasons behind the action, but merely pretext for discrimination. McDonnell Douglas, 411 U.S. at 804.  "To prove pretext, 'a plaintiff may not simply show that the employer's reason was false by must also demonstrate that the employer was motivated by discriminatory intent.'"  Maddox, 2014 U.S. Dist. LEXIS 138518, at *44 (quoting Zive v. Stanley Roberts Inc., 182 N.J. 436 (2005)). "The plaintiff retains the ultimate burden of proving that the retaliatory motive played a determinative role in the adverse decision." Donofry v. Autotote Systems, Inc., 350 N.J. Super. 276, 292 (App. Div. 2001).

As to the first prong, Plaintiff alleges that he engaged in protected activity when he testified truthfully in the DeSanto trial

in 2002.[12]  Defendants do not dispute this element for purposes of
the within motion.   In order to satisfy the second prong of the LAD
claim, Plaintiff must show a materially adverse employment action.
Under Plaintiff's theory of the case, he suffered "adverse events"
from 2002 to 2008 in retaliation for his testimony.  Without saying
so, he attempts to thread together various events, i.e., denial of
pay raises, his temporary assignment, and the failure to rescind his
retirement as one continuing violation.  He appears to do so in an
attempt to salvage otherwise time-barred claims.  The Supreme Court
has declared, however, that the continuing violation doctrine has
no applicability to "[d]iscrete acts such as termination, failure
to promote, denial of transfer, or refusal to hire" because "[e]ach
incident of discrimination and each retaliatory adverse employment

---

[12] The court notes that Plaintiff's state law claims may be barred
entirely by the applicable two-year statutes of limitation
applicable to both his NJCRA and LAD claims.  Brown v. City of Newark,
No. 09-3752, 2010 U.S. Dist. LEXIS 40564, 2010 WL 1704748, at *4
(D.N.J. Apr. 26, 2010)([a]lthough the NJCRA contains no express
statute of limitations, . . . the language of New Jersey's
generally-applicable personal injury statute of limitations []
combined with the NJCRA's similar purpose and design to § 1983, .
. . convinces this Court that New Jersey's two-year limitation
applies to the NJCRA.") (citation omitted); Jackson v. Chubb Corp.,
45 F. App'x 163, 165 (3d Cir. 2002)(two-year statute of limitations
applied to LAD claims).   The parties have not briefed the issue for
this Court on summary judgment.  Because this Court grants summary
judgment in favor of Defendants, finding that there is no evidence
of discrimination, even assuming that Plaintiff is proceeding under
a continuing violation theory.  Therefore, the Court need not
resolve the statute of limitations issue.

action constitutes a separate actionable 'unlawful employment practice.'" AMTRAK v. Morgan, 536 U.S. 101, 114, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).[13]  Even assuming a continuing violation theory, the record does not support the requisite causal connection between the protected activity and any adverse action complained of by Plaintiff, as required under the third prong.  True, a close temporal connection between the protected activity and the adverse action may be sufficient to establish this prong.  Watkins v. Nabisco Biscuit Co., 224 F. Supp. 2d 852, 872-73 (D.N.J. 2002).  However, a gap of as little as three months between the protected activity and the adverse action has been found to be, without more, insufficient.  Hussein v. UPMC Mercy Hosp., 466 F. App'x 108, 112 n.4 (3d Cir. 2012).

Where, as is the case here, the temporal proximity is not suggestive of retaliation, courts generally examine the record to determine whether "the proffered evidence, looked at as a whole, may suffice to raise the inference [of causation]." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007).  For example, a plaintiff can establish causation by alleging antagonistic conduct or animus by the employer during the intervening period between the protected activity and the adverse employment

_____

[13] While this is a Title VII case, New Jersey generally follows Title VII federal precedent in interpreting the LAD. McKenna v. Pacific Rail Serv., 32 F.3d 820, 838 (3d Cir. 1994).

activity, and inconsistent reasons proffered by the employer for the plaintiff's discharge.  See Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007) ("Where the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof [of causation], such as actual antagonistic conduct or animus against the employee").

Plaintiff attempts to build his case with respect to each adverse event – such as a negative evaluation or lack of a pay raise – by attributing it to Defendants' retaliation for his 2002 testimony.  According to Plaintiff, this retaliation began after his testimony in 2002 and ended in December 2008 when he was unable to rescind his resignation.  Plaintiff admits that while "most of the retaliation occurred more than six years after [he] testified, Zazzalli's telling Hale three or four years after the testimony that he caused the DeSanto loss was soon followed by an orgy of adverse statements about [his] performance from Hale, Gover, and Tiemann." Pl.'s Brief, at 14.  (emphasis added).  He argues that a jury could reasonably infer that these untrue statements were solicited not as fair evaluations but to paint a picture justifying his removal from the EEO/AA position.  Id.

The record simply does not support Plaintiff's claims. Plaintiff attempts to build his case based on inferences upon

inferences and assumptions.  See Johnson v. Multi-Solutions, Inc.,
493 Fed. Appx. 289, 292 (3d Cir. June 28, 2012)("An inference based
upon speculation or conjecture does not create a material factual
dispute sufficient to defeat entry of summary judgment"); Phillis
v. Harrisburg School Dist., No. 07-1728, 2010 U.S. Dist. LEXIS 31413,
at *53 (M.D. Pa. Mar. 31, 2010)(finding that attenuated inferences
were insufficient to defeat summary judgment), aff'd, 2011 U.S. App.
LEXIS 11821 (3d Cir. June 10, 2011).  Under Plaintiff's theory of
the case, anyone who gave Plaintiff a negative evaluation with
knowledge (through hearsay, lore, or otherwise)[14] of the DeSanto
trial and Plaintiff's supposed contribution to the loss, acted out
of retaliation.  Plaintiff must do more than rest on this theory,
and he has failed to meet his burden.

Even looking at each separate adverse event of which Plaintiff
complains – and again assuming a continuing theory violation to avoid
the glaring statute of limitations issue – there is no sufficient
evidence to support the causal connection.  For example, shortly
after the trial, Farish – who had previously given Plaintiff negative
reviews – permitted Plaintiff to stay as the EEO/AA Director despite
his misgivings.  As he stated in his December 12, 2002 letter, "[i]f
this were a private company, there is no question in my mind that

---

[14]  Many of the individuals Plaintiff alleges were antagonistic
towards him were not present at Rowan during the DeSanto trial.

you would have been terminated by this point.   I resist such an action based on my belief that your intentions are noble, however flawed may be your methods." DSOF at ¶ 52.  Plaintiff was permitted to continue to work as the Director for 4 1/2 years.  During this time, he was given pay increases in 2005 (1%) and 2006 (3%) despite negative evaluations.  Moreover, when Defendants terminated Plaintiff as the EEO/AA Director, Plaintiff asked to stay on for another eighteen months so that he could receive lifetime health and pension benefits. Defendants permitted him to do so and extended him a temporary position.  Defendant Farish offered Plaintiff this temporary position even though Dr. Tyrone McCombs did not wish to extend the position to Plaintiff.[15]  And even though that new position did not carry a salary of the size Plaintiff was making, $83,936.78, Plaintiff was permitted to receive his same salary and benefits. Plaintiffs' contention that "[nobody] in the Rowan hierarchy is authorized to make a 'temporary terminal assignment' of an employee," DSOF ¶ 75, even if true, ignores the reason for the assignment:  to provide Plaintiff with lifetime benefits which he would otherwise not receive.  This is hardly retaliatory conduct on the part of Defendants.

---

[15] Plaintiff objects to this evidence as hearsay testimony.  Of course, McCombs testimony would be permissible.

40

As for Plaintiff's termination in 2007 as the EEO/AA Director and transfer to a less prestigious positon, Defendants argue that Gover had no knowledge of Plaintiff's testimony and that Hale and Tiemann were not at the University in 2002 and, therefore, did not have knowledge of his testimony, but rather had lost confidence in Plaintiff's abilities.  Plaintiff responds that a jury should be permitted to infer that these individuals as well as Gover acted out of retaliation because of his 2002 testimony.  Yet, the record supports no such conclusion, let alone an inference.

Plaintiff's further allegation that he was retaliated against when he was not permitted to rescind his resignation similarly has no support in the record.  As discussed supra, those individuals who were permitted to change their retirement dates were those who were tenured or participants of the Faculty Transitional Retirement Program, neither of which Plaintiff was.  Plaintiff's argument that the decision to permit his retirement rescission was in retaliation for his testimony six years earlier - - by individuals who were directly involved with the DeSanto trial - - is just that, argument.

Moreover, even if Plaintiff has met his burden of showing a prima facie retaliation case - - which he has not - - Defendants have shown legitimate business reasons, as discussed at length supra, and Plaintiff has failed to show that such reasons were pretextual, other than circling back to his theory that everything each supervisor did

41

at Rowan after his testimony was done out of retaliation and an effort to eventually justify his removal five years later as the EEO/AA Director, and six years later as a Rowan employee. "'[T]o prove pretext . . . a plaintiff must do more than simply show that the employer's [proffered legitimate, non-discriminatory] reason was false; he or she must also demonstrate that the employer was motivated by discriminatory intent.'" El-Sioufi v. St. Peters University Hosp., 382 N.J. Super. 145, 173 (2005)(quoting Viscik v. Fowler Equip. Co., 173 N.J. 1, 14 (2002)).  "The plaintiff must submit evidence that either casts sufficient doubt upon the employer's proffered legitimate reason so that a fact finder could reasonably conclude it was fabricated, or that allows the fact finder to infer that discrimination was more likely than not the motivating or determinative cause of the termination decision." Id. (quoting Svarnas v. AT&T Commc'ns, 326 N.J. Super. 59, 82 (App. Div. 1999)).

Bald assertions and vague theories cannot survive summary judgment. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 541 (1995)(citation omitted).  In short, Plaintiff can provide no proof that Rowan's legitimate business reasons for its decisions were pretextual.  Other than his subjective view of how Rowan should have treated him, Plaintiff has not pointed to any evidence that would either cast sufficient doubt on Rowan's legitimate business reasons

42

or permit a factfinder to infer by a <u>preponderance of the evidence</u> that discrimination was more likely than not a motivating factor.

Defendants have introduced evidence that well <u>before</u> the <u>DeSanto</u> trial Plaintiff had received a series of negative evaluations.  <u>See</u> <u>supra</u> at 4-9.  Plaintiff continued to perform negatively even after the trial.  Plaintiff does not argue that the negative evaluations changed in intensity or scope after the trial; rather he contends that <u>no</u> negative evaluation was ever warranted. Despite his unsatisfactory performance evaluations, Plaintiff did receive pay increases after the trial and, importantly, rather than being terminated in 2007, Defendants permitted Plaintiff to stay an additional eighteen months so that he could receive lifetime benefits.  There is nothing before this Court besides innuendo to suggest that Defendants' reasons for any of the adverse events of which Plaintiff complains was pretextual in any way.  Accordingly, Defendants' motion for summary judgment as to his LAD claim is granted.

### C.   Count II (New Jersey Civil Rights Claim)

In Count II, Plaintiff also alleges a violation of the NJCRA in retaliation for his testimony in the <u>DeSanto</u> trial.  Under the New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c):

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution  or laws of the United States, or any

substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

The New Jersey Civil Rights Act is modeled after 42 U.S.C. § 1983. See Szemple v. Corr. Med. Servs., 493 Fed. Appx. 238, 241 (3d Cir. 2012)("The NJCRA is interpreted as analogous to §1983."). Because Defendants Rowan and Farish in his official capacity are not "persons" amenable to suit under the NJCRA, these claims are dismissed. See Didiano v. Balicki, 488 Fed. Appx. 634, 639 (3d Cir.)(affirming summary judgment where NJCRA claims dismissed against the state and an individual in his official capacity). Finally, even entertaining this claim on the merits, for the same reasons discussed above, Plaintiff's claim has no support in the record. Cottrell v. Wheels, 2011 U.S. Dist. LEXIS 26646, at *22-23 (D.N.J. Mar. 15, 2011)("because Defendants' are entitled to summary judgment regarding Plaintiff's retaliation claims, they are also entitled to summary judgment regarding Plaintiff's NJCRA claim."), aff'd, 2012 U.S. App. LEXIS 1319 (3d Cir. N.J., Jan. 23, 2012). Therefore, summary judgment is granted as to this claim.

44

V.   **Cross-Motion**

Plaintiff has cross-moved to bar the consideration of testimony by either Marie Tiemann or Robert Zazzali in the motion for summary judgment and requests an award of attorney's fees based on alleged misconduct in the discovery process.

With respect to the testimony for Marie Tiemann, Plaintiff is essentially appealing Judge Donio's well-reasoned opinion that "the Court is without authority to compel Ms. Tiemann, a non-party, to appear for a deposition in New Jersey."  Docket No. 59, at 8.  Under New Jersey Local Rule 72.1, "a party may appeal from a Magistrate Judge's determination of a non-dispositive matter within 14 days after the party has been served with a copy of the Magistrate's Judge's order. . . ."  Judge Donio's order was entered on October 9, 2013 and the instant cross-motion was not filed until March 29, 2014.

In addition, while Judge Donio ordered the Defendants to provide Ms. Tiemann's telephone contact information to Plaintiff, the Court noted that she remained outside of the Court's subpoena power.  This remains the case.  Moreover, Judge Donio addressed Plaintiff's now repeated argument that Tiemann's inclusion in the litigation control group is somehow dispositive: "The Court further rejects Plaintiff's assertion that Defendants' inclusion of Ms. Tiemann, a former employee, within the litigation control group obligates Defendants

45

to produce Ms. Tiemann, notwithstanding the fact that she resides beyond the Court' subpoena power." Docket No. 59 at 8.   Again, Plaintiff is essentially seeking an untimely appeal of Judge Donio's decision and presents no case law compelling this Court to reach a different decision than Judge Donio.

In addition, while Judge Donio noted that Plaintiff's prior motion was "denied without prejudice to the extent [that motion] seeks 'to bar[] Tiemann from testifying at trial,'" the instant motion is not in anticipation of trial.  As all counts of the SA Complaint have been dismissed, there will be no trial.  Finally, there are no new facts or case law that bring Tiemann within the subpoena power of this Court.  Thus, for the reasons already set forth by Judge Donio, this Court will deny Plaintiff's motion with respect to Tiemann.

Plaintiff also asks this Court to bar consideration of Robert Zazzalli's testimony stating that, during his second deposition as ordered by Judge Donio, Zazzali "repeatedly insisted that he had absolutely no recollection of the [DeSanto post-mortem meeting]." Docket No. 64-7.  Plaintiff states that this is in striking contrast to Zazzalli's earlier deposition wherein "Zazzalli's recollection of events was substantially intact and thorough." Id. at 5. Notably, Plaintiff provides this Court with no deposition excerpts in support of his point.  Other than mere speculation, Plaintiff has

provided this Court with no evidence to support his contention that Zazzali testified falsely under oath or that Defendants have otherwise "pollut[ed] the waters of justice."  Certainly, a failing memory of a meeting that occurred 12 years prior can hardly be said to constitute clear evidence of false testimony.  See United States v. Dunnigan, 507 U.S. 87, 94 (1993)("A witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.").

Because there is no evidence of discovery misconduct, this Court will deny Plaintiff's cross-motion including his request for attorney's fees.


**VI.   Conclusion**

For all these reasons, Defendants' motion for summary judgment is granted as to all counts.  In addition, Plaintiff's cross-motion is denied.  An appropriate Order will issue this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: December 11, 2014